**Below is an Order of the Court.**

_____
RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re:<br><br>Avalon Hotel Partners, LLC,<br><br>　　　　　　　　Debtor.<br>_____<br><br>Avalon Hotel Partners, LLC and<br>Avalon Hotel Owner, LLC,<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>Rivers Avalon Management, LLC,<br><br>　　　　　　　　Defendant.<br>_____ | Bankruptcy Case<br>No. 03-40414-rld11<br><br><br><br><br><br>Adv. Proc. No. 06-3065-rld<br><br>MEMORANDUM OPINION |

The issue before me is whether a secured promissory note obligation, characterized by the parties as a "hope note," is hopeless or in the money.

### Factual Background

This adversary proceeding (the "Adversary proceeding") arises out of the chapter 11 case of Avalon Hotel Partners, LLC (the "Debtor"),

Page 1 - MEMORANDUM OPINION

filed on September 15, 2003. The Debtor owned the upscale Avalon Hotel & Spa (the "Avalon Hotel"), a 100-room boutique hotel located on the Willamette River near downtown Portland, Oregon. Ownership of the Debtor was divided among a number of members: Several related entities (the "Pacific Western Entities") owned an aggregate 67.19% of the membership interests in the Debtor. See Ex. 11, p. 2. The hotel developer, Avalon Hotel Developer, LLC (the "Developer"), the principals of which were Mr. Paul Brenneke ("Mr. Brenneke") and Mr. Terrence Bean ("Mr. Bean"), held a 23.50% ownership interest in the Debtor. Id. Two other entities held the remaining minority membership interests. Id.

At the time of the Debtor's chapter 11 filing, it is highly doubtful that its members' equity interests had any value. That reality did not prevent the Pacific Western Entities and the Developer from wrangling at great expense of time and money virtually throughout the chapter 11 proceedings, continuing the pattern of their relationship established in prior state court litigation. In short, the Debtor's chapter 11 case was extremely contentious.

However, in May 2004, following marathon negotiations and numerous settlement conferences, a settlement was negotiated between the Pacific Western Entities and the Developer which resolved many of the claims between them. The settlement agreement (Ex. B, the "Settlement Agreement") provided, among other things, for the issuance of a promissory note (the "Promissory Note") in the face amount of $427,978 to Rivers Avalon Management, LLC ("RAM"), an affiliate of the Pacific Western Entities, secured by a deed of trust (the "Trust Deed") on the Avalon Hotel. The Promissory Note represented consideration to RAM for

Page 2 - MEMORANDUM OPINION

advances used to fund operations of the Avalon Hotel in chapter 11, in lieu of an administrative expense claim.  Payment of the Promissory Note expressly was subordinated to a number of prior liens on the Avalon Hotel, including the lien of "any credit line lender" (the "Credit Line Lender") up to $2 million.  <u>See</u> Ex. C, p. 6.  The Credit Line Lender is not identified in the Trust Deed, and the representatives of the Pacific Western Entities who testified at the trial, confirmed that the identity of the Credit Line Lender was not known by the Pacific Western Entities at the time the Settlement Agreement was finalized.

Negotiation of the Settlement Agreement was a breakthrough that allowed for confirmation of a reorganization plan (the "Plan") in the Debtor's chapter 11 case.  In May 2004, management of the Avalon Hotel was transferred to GH-Avalon Hotel Management, LLC ("Avalon Management"), after the Developer initiated negotiations with Avalon Management's principal, Mr. John Cullen, who owned and managed the Governor Hotel in Portland, Oregon through affiliated entities.  Avalon Management's agreement to manage the Avalon Hotel was approved by this court, finding the proposed management company to be disinterested.  <u>See</u> Ex. 4.  The Plan was confirmed by Order of this court entered on October 29, 2004. <u>See</u> Ex. E.

Following confirmation of the Plan, the members of the reorganized Debtor were Phoenix at Avalon Hotel, LLC ("Phoenix"), and GHG-Avalon Hotel, LLC ("GHG-Hotel"), each of which held a 50% ownership interest in the Debtor.  <u>See</u> Ex. 11, p. 3, and Ex. V, p. 1.

Chapter 11 has been a success in this case:  Postconfirmation, all allowed administrative expense claims have been paid, general

Page 3 - MEMORANDUM OPINION

unsecured creditors (primarily trade debt) have received the distribution provided for in the Plan, and all liens on the Avalon Hotel with priority ahead of the Trust Deed have been satisfied.

However, the Promissory Note has not been paid, and in the Adversary Proceeding, the plaintiffs, Avalon Hotel Partners, LLC, and Avalon Hotel Owner, LLC (the "Avalon Hotel Owners"), seek a specific performance decree requiring RAM to release the Trust Deed or decreeing that RAM's lien rights with respect to the Avalon Hotel property are deemed released. The basis for the Avalon Hotel Owners' specific performance cause of action is found in language of the "Due on Sale" provision of the Trust Deed, providing as follows:

> ...Borrower shall be entitled to the release of the lien of this Deed of Trust and of any other instrument securing the [Promissory] Note upon satisfaction of all of the following conditions precedent: (a) the release shall be in connection with the sale of the [Avalon Hotel] Property to a bona fide purchaser who is not affiliated with or related to the Borrower or any affiliate of the Borrower in any manner; (b) the purchase price shall be equal to the fair market value of the Property as determined by Lender in its reasonable discretion; and (c) no part of the purchase price shall have been paid to Borrower or any person or entity affiliated with or related to Borrower or any affiliate of Borrower. Ex. C, p. 6.

In the Trust Deed, "Borrower" is defined as the Developer or the Debtor, and "Lender" refers to RAM, its successors and assigns. See Ex. C, p. 2.

On December 29, 2005, the Avalon Hotel was sold (the "Sale") to Avalon Hotel Owner, LLC ("AHO") pursuant to a Purchase and Sale Agreement that was entered into on December 27, 2005. See Ex. R. An appraisal report prepared by PKF Consulting for the Royal Bank of Scotland gave a market value for the Avalon Hotel as of December 1, 2005, of $14,000,000.

Page 4 - MEMORANDUM OPINION

See Ex. 10. The purchase price ("Purchase Price") was $14,719,828.31. See Ex. R, p. 2. The sale proceeds were paid to satisfy the five liens preceding the Trust Deed in priority, including the lien of the Credit Line Lender, with no net sale proceeds available to apply to the Promissory Note obligation to RAM.

From the Purchase Price, the Credit Line Lender, Avalon Capital NW, LLC ("Avalon Capital"), received $1,921,950, including accrued interest at the rate of 15%[1] per annum on principal funds advanced of $1,868,861. See Ex. P, pp. 2-3, and Ex. R, p. 2. It is unclear to me from the organizational charts submitted into evidence by the parties exactly how Avalon Capital is owned. (Compare Ex. 11, p.3 with Ex. V, p.4.) However, the record is clear that Phoenix advanced a portion, perhaps 50%, of the credit line funds advanced to the Debtor to fund the operations of the Avalon Hotel postconfirmation. Phoenix is owned by Dunavan Portland, LLC, of which Mr. Brenneke is president and an affiliate, Bean Avalon, LLC, of which Mr. Bean may be an affiliate, Miller Family Holdings, LLC, and Schwabe, Williamson & Wyatt, PC, the law firm that represented the Developer in the Debtor's chapter 11 proceedings. See Ex. V, p. 2. No evidence was submitted by any party as to what portions of the funds advanced from Phoenix to Avalon Capital to be lent to the Debtor were advanced by the various owners of Phoenix and/or their affiliates. No evidence was submitted by any party as to how the Purchase Price proceeds paid to Avalon Capital were distributed

---

[1] Mr. Cullen clarified in his testimony that only the Phoenix component of Avalon Capital received interest. The GHG-Hotel component of Avalon Capital forfeited its interest under the Option agreement.

Page 5 - MEMORANDUM OPINION

through Phoenix to its owners and their affiliates.

Mr. Cullen severed his relationship with the Avalon Hotel and Avalon Management effective January 1, 2005, retaining an option (the "Option") to acquire the Avalon Hotel in conjunction with acquisition of the Governor Hotel through October 31, 2005. See Exs. 7 and 8. Mr. Cullen paid a total of $200,000 to extend the Option through December 31, 2005. See Ex. 7, p. 1. He exercised the Option to allow the Sale to AHO to be consummated on or about December 29, 2005.

## Jurisdiction

This court has jurisdiction to hear this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and United States District Court for the District of Oregon Local Rule 2100-1. The issues before me are matters of contract interpretation, generally not within the core jurisdiction of the bankruptcy court. However, the cause of action stated in the Adversary Proceeding clearly arises out of the Debtor's chapter 11 case, and concerns implementation of the Settlement Agreement, which was incorporated in the confirmed Plan. Under Article VIII of the Plan, this court specifically retained jurisdiction "[t]o hear and determine disputes arising in connection with" the Plan and "[t]o hear and determine any motion, application, adversary proceeding or contested matter concerning the interpretation or enforcement of the Settlement Agreement." In these circumstances, I find that this court has jurisdiction to make a final decision in the Adversary Proceeding.

## Legal Discussion

The Avalon Hotel Owners seek a specific performance decree releasing the Avalon Hotel from the lien of the Trust Deed, arguing that

Page 6 - MEMORANDUM OPINION

the three conditions stated in the Trust Deed for its release have been fully satisfied.

The Trust Deed provides that it "shall be governed by, construed and enforced in accordance with the laws of the State of Oregon." Ex. C, p. 16. Accordingly, I will be guided by Oregon law in interpreting the Trust Deed.

The Trust Deed further provides that, together with the Promissory Note, it

> constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.
> Ex. C, p. 15.

No evidence was presented by the parties that the Trust Deed ever was amended. I find that the Trust Deed and the Promissory Note are integrated, self-contained expressions of the agreement among RAM, the Debtor and the Developer as to their respective terms.

Oregon Revised Statutes Section 41.740 provides that:

> When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except where a mistake or imperfection of the writing is put in issue by the pleadings or where the validity of the agreement is the fact in dispute. However this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in ORS 42.220, or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud....

Oregon Revised Statutes Section 42.220 provides that:

Page 7 - MEMORANDUM OPINION

> In construing an instrument, the circumstances under
> which it was made, including the situation of the
> subject and of the parties, may be shown so that the
> judge is placed in the position of those whose
> language the judge is interpreting.

Consistent with these provisions of Oregon law, I held at the outset of the trial that evidence as to the circumstances of the Debtor's chapter 11 case and the negotiation and drafting of the Settlement Agreement, the Promissory Note and the Trust Deed was admissible, and I have considered all such evidence submitted by the parties to establish context in the Adversary Proceeding. However, I am mindful of the limits to my consideration of such evidence.

Admissible or not, evidence that is inconsistent with or that contradicts unambiguous written terms of an Oregon contract is legally ineffective. See, e.g., Abercrombie v. Hayden Corp., 320 Or. 279, 286, 289, 883 P.2d 845, 850, 851 (1994); Hatley v. Stafford, 284 Or. 523, 533-34, 588 P.2d 603, 608-09 (1978).

The challenge facing the Avalon Hotel Owners from the inception of this Adversary Proceeding is that they bear the burden of proof by at least the preponderance of the evidence to establish that each of the three conditions set forth in the Trust Deed has been met in order to entitle them to a release of the Trust Deed as third party beneficiaries of the Borrower. See, e.g., Murray v. Laugsand, 179 Or. App. 291, 294, 39 P.3d 241, 243 (2002). The three conditions are stated in the Trust Deed as follows:

> (a) the release shall be in connection with the sale
> of the [Avalon Hotel] to a bona fide purchaser who is
> not affiliated with or related to Borrower or any
> affiliate of Borrower in any manner; (b) the purchase
> price shall be equal to the fair market value of the

Page 8 - MEMORANDUM OPINION

> [Avalon Hotel] as determined by Lender in its
> reasonable discretion; and (c) no part of the purchase
> price shall have been paid to Borrower or any person
> or entity affiliated with or related to Borrower or
> any affiliate of Borrower. Ex. C, p. 6.

Evidence was submitted by both sides as to the alleged satisfaction or nonsatisfaction of the three conditions. In reaching a decision, I have focused on the third condition.

The third condition (the "Third Condition") for the release of the Trust Deed provides that "no part of the purchase price shall have been paid to Borrower or any person or entity affiliated with or related to Borrower or any affiliate of Borrower." The Avalon Hotel Owners base their claim that the Third Condition has been satisfied on two arguments.

In a post-trial letter to the court dated March 14, 2006, that I treat as continuing argument, counsel for the Avalon Hotel Owners argues that the term "no part of the purchase price" should be interpreted as no return on equity "after payment of the 1st through 5th liens." Doc. No. 15, p. 2. That argument represents a refinement on the Avalon Hotel Owners' general position that in order to be consistent with the subordination provisions of the Trust Deed, any distribution from the Purchase Price to pay the obligation to the Credit Line Lender, or indeed, to pay any lien prior to the Trust Deed, should not be interpreted as inconsistent with satisfaction of the Third Condition. In other words, the Avalon Hotel Owners argue that payment of debt senior to the Promissory Note obligation secured by the Trust Deed cannot be interpreted as a payment to the Debtor or a party affiliated with or related to the Debtor, as a matter of law. I find the arguments of the Avalon Hotel Owners not convincing for the following reasons.

Page 9 - MEMORANDUM OPINION

First, I find the phrase "no part of the purchase price" is not ambiguous and means what it says. RAM argues, and I agree that the term "purchase price" is "commonly used and generally understood to mean money paid to purchase or acquire something." Doc. No. 16, p. 2. If RAM, the Developer and the Debtor intended an exclusion from any "part of the purchase price" for payments of senior liens or indebtedness, they could have said so in the Third Condition language. Roger Royse, a lawyer who was the principal negotiator and draftsman for the Pacific Western Entities, including RAM, with regard to the Settlement Agreement, the Promissory Note and the Trust Deed, testified that "every word" of the agreements was heavily negotiated. He testified in deposition that:

> The purpose was to avoid [the Developer and Mr. Brenneke] coming up with some way to avoid paying us. And what we were concerned about is that they would do what they've always done, and that's figure out a way to transfer this property to some other entity and avoid paying our note in the process. Ex. 13, p. 3.

The Avalon Hotel Owners argue that since RAM in the Trust Deed expressly subordinated payment of the Promissory Note obligation to payment of the secured credit line up to $2 million of any Credit Line Lender, the fact that Avalon Capital is affiliated with or related to the Developer, the Debtor or any affiliate of either of them is irrelevant. I disagree.

I find that the subordination and due on sale provisions of the Trust Deed operate independently. At the time that the Settlement Agreement, the Promissory Note and the Trust Deed were finalized, the identity of the Credit Line Lender was not known. RAM agreed to subordinate its Trust Deed lien to the lien of a Credit Line Lender up to

Page 10 - MEMORANDUM OPINION

$2 million to allow for future financing of Avalon Hotel operations in order to preserve the possibility that its "hope note" would be paid. However, the deal, as reflected in the Third Condition by its terms, was that if the Debtor, the Developer or any affiliated or related person or entity got any proceeds from the sale of the Avalon Hotel, whether through payment of debt or return on equity or otherwise, the Third Condition for release of the Trust Deed would not be satisfied.

There is no question that the Promissory Note debt represented hard dollars advanced by RAM to fund Avalon Hotel operations in chapter 11. In the absence of the deal reflected in the Settlement Agreement, RAM would have had an administrative expense claim in the Debtor's bankruptcy case in the approximate amount of the Promissory Note debt that the Debtor would have been required to pay in full, to the extent allowed, following confirmation of the Plan. There is nothing inconsistent with the subordination provisions of the Trust Deed in the requirement of the Third Condition that if the Debtor, the Developer or any affiliated or related party got any payment from the Purchase Price for the Avalon Hotel, RAM should be paid as well.

Beyond the breadth of the phrase "no part of the purchase price," the wording of the Third Condition reflects the concern of the Pacific Western Entities that the Trust Deed not be released if any portion of the Purchase Price went to the Debtor, the Developer or any of their control persons or entities. The Third Condition specifies that no part of the Purchase Price "shall have been paid to Borrower or any person or entity affiliated with or related to Borrower or any affiliate of Borrower." Mr. Royse testified at the trial that the terms

Page 11 - MEMORANDUM OPINION

"affiliated" and "related to" were intended in the broadest sense possible.

Affiliate is used in two senses in the Third Condition: In the phrase "any affiliate of Borrower," it means a control person or entity, consistent, for example, with the definition in several Oregon statutes, characterizing an "affiliate" as "a person who directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, another person." See, e.g., ORS §§ 60.801(3)(a), 60.825(1) and 90.820(4)(c).

However, "affiliate" is used in even a broader sense in the specification that no part of the Purchase Price shall have been paid to Borrower or any person or entity "affiliated with or related to" Borrower or any affiliate of the Borrower. In that sense, the Third Condition addresses payments to any entity that has any connection or relationship to the Debtor or the Developer.

Avalon Capital is owned in part by Phoenix. Phoenix in turn is owned in part by Dunavan Portland, LLC, whose President is Mr. Brenneke, and in part by Bean Avalon, LLC, in which I assume Mr. Bean has an interest. Mr. Brenneke and Mr. Bean were the principals of the Developer. I cannot tell from the evidence presented what financial contributions, if any, were made by Mr. Brenneke and Mr. Bean, either directly or indirectly through intermediaries, to Phoenix to fund Avalon Capital and the credit line loan(s) to finance Avalon Hotel operations postconfirmation. However, the Debtor's Disclosure Statement states the following with respect to Avalon Capital:

> Avalon Capital, LLC will be an entity comprised of an

> affiliate of GH-Avalon Management, LLC and an entity
> to be formed and controlled by Paul Brenneke or by an
> affiliate that is controlled by Paul Brenneke and/or
> Terry Bean. Avalon Capital, LLC will be funded by the
> members of Avalon Hotel [sic] Capital, LLC, including
> Brenneke and/or Bean and/or an affiliated entity
> funded and controlled by them. Ex. G, p. 22.

I further cannot tell from the evidence presented what portions, if any, of the Purchase Price were distributed through Avalon Capital to Phoenix and ultimately to entities owned or controlled by Mr. Brenneke and Mr. Bean. However, with Mr. Brenneke and Mr. Bean implicated in the ownership structures of Avalon Capital and Phoenix, in order to meet their burden to establish that the Third Condition was satisfied, the Avalon Hotel Owners were required to show that no portion of the Purchase Price was paid to entities owned or controlled by Mr. Brenneke or Mr. Bean, whether as repayment of debt or as a distribution on equity. The Avalon Hotel Owners simply have not met that burden. Accordingly, I find that the Avalon Hotel Owners have not met the burden of proof to prevail on their specific performance cause of action in the Adversary Proceeding, and RAM is entitled to judgment in its favor.

With regard to the other two conditions for release of the trust deed, I find as follows: The first condition ("First Condition") specifies that release of the Trust Deed "shall be in connection with the sale of the [Avalon Hotel] to a bona fide purchaser who is not affiliated or related to Borrower or any affiliate of Borrower in any manner...." Again, consistent with the testimony of Mr. Royse, I understand the term "affiliate" in the First Condition to be used in its broadest sense.

At the outset, I find that the Avalon Hotel Owners' purchase of

the Avalon Hotel for a Purchase Price of $14,719,828.31 is a bona fide purchase for value. If anything, in light of the Avalon Hotel's appraised value of $14,000,000 as of December 1, 2005, and Mr. Cullen's testimony that he found the appraised value surprisingly high, I agree that the Purchase Price was in excess of the hotel's fair market value.

The parties' contentions with respect to the First Condition focus on the relationship of Mr. Cullen to the entities on both the buyer and seller sides of the Avalon Hotel sale transaction. Mr. Cullen was an affiliate of the entity that managed the Avalon Hotel from some time in May 2004, and he held an ownership interest in GHG-Hotel, which had a 50% ownership interest in the Debtor postconfirmation. However, from the uncontradicted evidence in the record, I find that Mr. Cullen severed all connections with the Avalon Hotel manager and owners no later than February 14, 2005, solely retaining the Option. The Option was exercised in December 2005 by an entity that was not affiliated with the Debtor or the Developer in any manner. I find that Mr. Cullen's relationships with the Avalon Hotel Owners do not make him or them affiliates of the Debtor or the Developer. Accordingly, I find that the First Condition has been satisfied.

The second condition ("Second Condition"), which requires that the Purchase Price "shall be equal to the fair market value of the Property as determined by [RAM] in its reasonable discretion...," is problematic. As discussed above, I find that the Purchase Price in all likelihood was in excess of the fair market value of the Avalon Hotel at the end of 2005. However, that does not mean that RAM is unjustified in smelling a rat when the Purchase Price was set at an amount just high

Page 14 - MEMORANDUM OPINION

enough to satisfy all liens prior to the Trust Deed, but not high enough to pay any amount of the Promissory Note obligation to RAM.

From the record before me, I find that the Purchase Price was a negotiated amount that captured the full current fair market value of the Avalon Hotel, plus enough to satisfy the liens of all parties, other than RAM, that might assert personal guarantee liabilities for a deficiency against affiliates of the Borrower and the Developer. Based on the testimony of the representatives of the Pacific Western Entities at trial, I find that the Pacific Western Entities benefitted from the lien satisfactions resulting from the sale. However, those findings do not establish that the Purchase Price was not engineered by parties to the Avalon Hotel sale, whether or not the Avalon Hotel Owners actively participated in the engineering, to satisfy the liens on the Avalon Hotel just short of providing for a payment on the Promissory Note obligation secured by the Trust Deed. This result is precisely what Mr. Royse testified in his deposition the Pacific Western Entities were seeking to avoid in negotiating and drafting the terms of the conditions to release of the Trust Deed. See Ex. 13, p. 3. From the record before me, I cannot find that the Second Condition has been satisfied.

In its Answer to the Complaint, elaborated upon in the Pre-Trial Order and in its trial memorandum, RAM raised as an alternative defense to the Avalon Hotel Owners' cause of action that under the "due on sale" clause of the Trust Deed, RAM had the option to declare all sums secured by the Trust Deed due and payable upon the sale or transfer of more than 35% of the membership interests of the Debtor. RAM argued that sometime after confirmation of the Plan, a transfer of over 35% ownership

Page 15 - MEMORANDUM OPINION

in the Debtor was effected.  Accordingly, RAM should be able to enforce its Promissory Note obligation based on the due on sale clause being triggered in advance of the sale of the Avalon Hotel.  However, prior to the Avalon Hotel sale, RAM had neither declared a default under the Promissory Note or Trust Deed, nor raised enforcement of the due on sale clause of the Trust Deed as an issue, even though Mr. Royse testified at the trial that he was aware of the transfers of 50% ownership interests in the Debtor each to Phoenix and Grand Heritage from documents filed with this court in late 2004.

The Avalon Hotel Owners have requested that I decide the question as to whether the due on sale provision of the Trust Deed in fact was triggered by a transfer of ownership interests in the Debtor in advance of the Avalon Hotel sale.  However, the record at trial with respect to the due on sale question is sketchy at best.  Since I have decided the entire cause of action alleged in the Avalon Hotel Owners' Complaint in the Adversary Proceeding through my decision on whether all three conditions to release of the Trust Deed lien have been satisfied, I do not need to decide the due on sale question.  Not being required to jump into that particular briar patch, I decline to do so.

## Conclusion

I have found that the Avalon Hotel Owners have not met their burden of proof to establish their entitlement to release of the Trust Deed as a lien on the Avalon Hotel property.  Accordingly, I find that judgment in the Adversary Proceeding should be entered in favor of the defendant, RAM.  Counsel for RAM should prepare and submit a form of judgment consistent with my rulings set forth in this Memorandum Opinion,

Page 16 - MEMORANDUM OPINION

after submitting the draft form of judgment to counsel for the Avalon Hotel Owners for review and comment as to form, within ten (10) days following the date of entry of this Memorandum Opinion.

# # #

cc:     John H. Durkheimer
        S. Ward Greene
        Keith S. Dubanevich
        U.S. Trustee

Page 17 - MEMORANDUM OPINION